UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GLOBAL INDUSTRIES HOLDINGS, LTD.,**

    **Plaintiff,**

v.                                                                                        Case No.

**EDGAR MORA, ELIZAVETA LOGAN,
EC CELLARS, LLC and WINE FLOW LLC,**

    **Defendants.**

_____/

**COMPLAINT**

Plaintiff, Global Industries Holdings, Ltd. ("Global" or "Plaintiff"), sues Edgar Mora ("Mora"), Elizaveta Logan ("Logan"), EC Cellars LLC ("EC Cellars"), and Wine Flow LLC ("Wine Flow") (collectively, "Defendants") and alleges as follows:

**PARTIES**

1. Plaintiff is a Bahamas incorporated company with a principal place of business at 23F-1, No. 213, Chaofu Road, Xitun Di, Taichung, 407, Taiwan, ROC.

2. Defendant Mora is a natural person and a resident of the state of Florida who resides at 141 New Briton Court, Bradenton, Florida 34212.

3. Defendant Logan is a natural person and a resident of the state of Florida who resides at 141 New Briton Court, Bradenton, Florida 34212.

4. Defendant EC Cellars is a California limited liability company with a registered business address of 255 Lambert Street, Suite 6, Oxnard, CA 93036. EC Cellars formerly had a place of business at 2001 Palmer Avenue, LL3, Larchmont, New York 10538 but was never authorized or registered to do business in the State of New York. The State of California suspended

EC Cellars' authorization to do business on October 5, 2021 for failure to file information required under the laws of California.

5. Defendant Wine Flow is a Florida limited liability company chartered by Mora on or about February 20, 2023 with a principal place of business at 8128 Uzitia Dr., Sarasota, Florida 34240.  Mora was the initial manager of Wine Flow. On or about March 23, 2023, Mora was removed as the manager of Wine Flow and Logan was added as the manager of Wine Flow.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 18 U.S.C. §1964(c) because Plaintiff is asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et seq.*

7. The Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees and there is complete diversity of citizenship between the Plaintiff and the Defendants.

8. Venue is proper in this judicial district pursuant to 18 U.S.C. §§ 1965(a) and (b) and 28 U.S.C. § 1391 because:

   a) Defendants Mora and Logan reside in this district;

   b) Defendant Wine Flow, through Logan as its current manager, has an agent in this district and transact its affairs in this district; and

   c) The ends of justice require that Defendant EC Cellars be brought before the Court insomuch as Defendant Wine Flow is a successor in interest to EC Cellars and is liable for the actions and debts of EC Cellars.

## FACTUAL ALLEGATIONS

9. In June 2018, Global, through its principal, Chanwa Nguy ("Nguy"), contacted Mora to discuss Global's interest in purchasing a selection of fine wines suitable for holding as an investment. Upon the advice and recommendations of Mora, Global made its first purchase of investment grade wine from Mora's business, EC Cellars. That first purchase consisted of several cases of fine wine bearing the labels of Petrus and Screaming Eagle ("First Batch").

10. The purchase price for the First Batch was $359,258.98 and Global paid EC Cellars such amount by wire transfer. At Mora's recommendation, the invoices for the First Batch listed the delivery location as Seabrook Export Services ("Seabrook") located at 8 River Road in London, United Kingdom. EC Cellars delivered the First Batch to Seabrook on or about October 1, 2018.

11. In April, 2019, Mora and Nguy, on behalf of Global, communicated by cell phone and email regarding an additional purchase of investment grade fine wine. Based upon Mora's advice and recommendations, Global agreed to make a second purchase of investment grade wine. The second purchase consisted of several additional cases of Screaming Eagle wine and several cases of Domaine de la Romanee-Conti wine ("Second Batch").

12. Mora determined a purchase price for the Second Batch of $375,939.00 by using publicly available data of the average prices for each brand and vintage of wine ("Second Batch Purchase Price"). Mora shared this data via email with Nguy prior to Global purchasing the Second Batch. Based on Mora's research and advice, Global agreed to pay EC Cellars the Second Batch Purchase Price.

13. Before making payment of the Second Batch Purchase Price, Plaintiff requested that EC Cellars ship the Second Batch to Seabrook as had been the practice and course of conduct established with the First Batch.

#30230675v1

14. Accordingly, preliminary invoices for the Second Batch listed Seabrook as the delivery destination.

15. Shortly thereafter, Mora contacted Global and insisted on a change in the shipping location from Seabrook to EC Cellar's warehouse in Larchmont, New York. Nguy, on behalf of Global, agreed to this change on the condition that each selection of wine comprising the Second Batch would first be inspected and processed for consolidation by Mora and EC Cellars at the warehouse in Larchmont, New York. Thereafter, the Second Batch would be repacked before being air shipped to Seabrook.

16. On April 18, 2019, Global initiated a wire transfer to EC Cellars in the amount of $268,139.00 as the first installment payment of the purchase price for the Second Batch. The balance of the purchase price in the amount of $107,800.00 was wire transferred to EC Cellars on April 26, 2019.

17. Payment of the total amount of the Second Batch Purchase Price was paid by Plaintiff to EC Cellars in reliance on Mora's representations that the Second Batch would be delivered to Seabrook once it had been processed and inspected.

18. After payment of the Second Batch Purchase Price, Global was the owner of the wines comprising the Second Batch pursuant to the EC Cellars invoice terms.

19. In reliance on the process used to purchase and ship the First Batch to Seabrook and on Mora's assurances that the Second Batch would be shipped to Seabrook after EC Cellars acquired the wines comprising the Second Batch (including the inspection, processing and repacking insisted upon by Mora), Global assumed that the Second Batch would be delivered to Seabrook.

20. Eventually, Global learned that EC Cellars never delivered the Second Batch to Seabrook.

21. At all times pertinent to the claims set forth herein, Logan was an employee of EC Cellars and a close confidant of Mora.

## **MISREPRESENTATIONS BY MORA AND LOGAN**

22. In the summer of 2021, Plaintiff made several inquiries to EC Cellars as to the status of storage and condition of the Second Batch.

23. On or around July 5 and July 7, 2021, Logan sent an email and a letter in response to Global's inquiries regarding the storage and condition of the Second Batch (the "July 2021 Communications").

24. In the July 2021 Communications, Logan represented that the Second Batch remained in "our New York temperature-controlled wine cellar in perfect condition" located at Larchmont, New York.

25. Around the time of the July 2021 Communications, Mora verbally represented to Nguy that the Second Batch had not been shipped to Seabrook and remained at EC Cellars' Larchmont warehouse because of shipping delays caused by the Covid-19 pandemic (the "Mora Communications").

26. Under information and belief, the Second Batch was not in the possession of EC Cellars at the time of the July 2021 Communications or at the time of the Mora Communications.

27. Logan knew or should have known that the Second Batch was not in the possession of EC Cellars at the time of the July 2021 Communications.

28. Mora knew or should have known that the Second Batch was not in the possession of EC Cellars at the time of the Mora Communications.

#30230675v1

29. The July 2021 Communications and the Mora Communications were false when made and were made with the intent to mislead Plaintiff as to the status of the Second Batch so as to dissuade Plaintiff from taking legal action to recover possession of the Second Batch.

30. On October 5, 2021, the State of California suspended EC Cellars' authorization to do business as a California limited liability company.

31. On or about February 1, 2022, Mora and Logan, having previously moved from New York to Florida, entered into a three-year residential lease agreement for real property located at 141 New Briton Court, in Bradenton, Florida. By April 2022, both Mora and Logan occupied such property as their residence.

32. On October 30, 2022, Nguy met Mora in Florida to discuss the storage location of the Second Batch ("Florida Meeting"). In that discussion, Mora again represented to Nguy that the Second Batch was in storage with EC Cellars. Based on the representations that Mora and/or EC Cellars remained in possession of the Second Batch at the Florida Meeting, Nguy then instructed Mora to arrange for shipment of the Second Batch to Seabrook. Mora then lied to Nguy at the Florida Meeting by telling him that the Second Batch would be shipped to Seabrook.

33. Mora failed to disclose to Plaintiff that EC Cellars' authorization to conduct business had been suspended by the State of California more than a year prior to the Florida Meeting and that EC Cellars had ceased active business operations several months before.

34. Over the seven months following the October 30, 2022 meeting, Mora failed to execute Global's express instructions to ship the Second Batch to Seabrook,

35. Mora subsequently stopped responding to text messages, calls and emails from Nguy.

#30230675v1

36. John Wyatt, the Managing Director of Seabrook, intervened to encourage Mora to respond to Plaintiff's inquiries to no success.

37. On February 20, 2023, Mora chartered Wine Flow as a Florida limited liability company.

38. On February 28, 2023, Logan replaced Mora as the manager of Wine Flow.

39. Mora and Logan chartered Wine Flow to continue engaging in the business conducted by EC Cellars with the intent to hinder, delay or defraud the legitimate creditors of EC Cellars such as Global.

40. On May 17, 2023, Nguy, on behalf of Global, emailed Mora, copying John P. Engel, Global's New York attorney, reiterating his prior instructions and Mora's agreement to ship the Second Batch to Seabrook.

41. Following the May 17, 2023 email from Nguy, Mora falsely committed in a telephone call to Nguy that he would arrange to ship the Second Batch to Seabrook the following week.

42. Mora lied in the telephone call he had with Nguy after May 17, 2023 as neither he nor EC Cellars was in possession of the Second Batch.

43. On May 23, 2023, attorney Engel sent Mora a letter requesting that Mora confirm he would execute Global's instructions regarding shipping of the Second Batch and confirm the current location of the Second Batch. Engel warned that failure on Mora's part to communicate would lead Global to consider other actions to safeguard the Second Batch.

44. Mora has not responded to the May 23, 2023 letter. Mora continues to evade Global's repeated attempts at communication.

## THE "SECOND BATCH" WINE

45. Domaine de la Romanee-Conti and Screaming Eagle brand wines are scarce and highly valuable assets that have appreciated considerably since Plaintiff purchased the Second Batch in April 2019.

46. Three bottles of Screaming Eagle wine purchased in the second batch bore the signature of the prolific winemaker responsible for those vintages, further increasing the value of the wine and rendering it significantly more difficult to replace.

47. Using the same publicly available market date that Mora used to calculate purchase prices in April, 2019, as well as taking into account the likely price premium associated with the signed bottles of wine and the bottles of wine sold together as a collection, Plaintiff estimates in good faith that the Second Batch is currently worth at least $750,000.00 as of the date of this complaint.

## COUNT I - CONVERSION

48. Plaintiff realleges and incorporates Paragraphs 1 through 25, Paragraphs 29 through 40 and Paragraphs 42 through 47, above, by reference.

49. At all relevant times, Plaintiff had the right to possess the Second Batch as Plaintiff paid the invoices for the Second Batch in full upon receipt which resulted in Plaintiff becoming the owner of the Second Batch.

50. Defendants EC Cellars, Mora and Logan intentionally assumed control over the wine in the Second Batch by failing to execute Plaintiff's instructions to ship the Second Batch to Seabrook and by retaining actual or constructive possession of the undelivered wine notwithstanding Plaintiff's repeated demands for shipment of that wine to Seabrook.

51. Defendants EC Cellars, Mora and Logan have maintained their actual or constructive possession of the Second Batch to the exclusion of Plaintiff's rights.

52. Because of the intentional and wrongful conduct of Defendants EC Cellars, Mora and Logan, Plaintiff has been and will continue to be injured. Such injuries entitle Plaintiff to recover compensatory damages and interest in such amounts as are equal to the valuation of the wine comprising the Second Batch as determined by an expert together with such other proof presented trial may warrant as well as punitive damages.

53. Plaintiff is entitled to recover all monies expended to recover converted property as special damages including attorney's fees.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for damages and costs based on Defendants' conversion of the Second Batch with (i) damages based upon the market value of the wine comprising the Second Batch or, in the alternative, for the amount of the Second Batch Purchase Price; (ii) special damages; (iii) pre-judgment and post-judgment interest and such other relief as is appropriate under the law.

## COUNT II - UNJUST ENRICHMENT

54. This is an action for damages based on unjust enrichment and is plead in the alternative to Plaintiff's claims for conversion and breach of contract.

55. Plaintiff repeats and realleges Paragraphs 1 through 25, Paragraphs 29 through 40 and Paragraphs 42 through 47, above, as if fully set forth herein.

56. Defendants accepted payment for the Second Batch but have retained possession of the wine comprising the Second Batch against Plaintiff's express instruction.

57. Defendants have been unjustly enriched at Plaintiff's expense by their continued retention of the Second Batch.

#30230675v1

58. Equity and good conscience require that Defendants relinquish possession of the second batch or otherwise compensate Plaintiff for loss of this undelivered investment property.

59. Because of Defendants' actions, Plaintiff has been damaged in an amount to be determined through valuation by an expert and as proof at trial may warrant, plus all fees, costs, attorney's fees and pre-judgment interest to the extent available under applicable law.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for damages and costs based on the extent to which Defendants' have been unjustly enriched by their actions in retaining possession of the wine comprising the Second Batch including pre-judgment and post-judgment interest together with such other relief as is appropriate under the law.

## COUNT III - BREACH OF CONTRACT

60. This is an action for damages based for breach of contract and is plead in the alternative to Plaintiff's claims for conversion and unjust enrichment.

61. Plaintiff repeats and realleges paragraphs 1 through 47, above, as if fully set forth herein.

62. Defendant EC Cellars breached its agreement with Plaintiff by failing to deliver the Second Batch to Seabrook.

WHEREFORE, Plaintiff demands judgment against Defendant EC Cellars for breach of contract together with pre-judgment and post-judgment interest and Plaintiff's costs incurred in bringing this action and for such other relief as is appropriate under the law.

## COUNT IV - VIOLATION OF RICO 18 U.S.C. §1962(C) CONDUCTING THE AFFAIRS OF A RACKETEERING ENTERPRISE

63. This is an action for damages against all Defendants for violation of 18 U.S.C. §1962(C).

64. Plaintiff repeats and realleges paragraphs 1 through 47, above, as if fully set forth herein.

65. At all relevant times in relation to the claims asserted in this Count IV, Defendants are natural persons or corporate entities and, as such, are "persons" within the meaning of 18 U.S.C. §1961(3).

66. At all relevant times in relation to the claims asserted in this Count IV, Defendants are associated with each other as an "enterprise" within the meaning of 18 U.S.C. §1961(4) ("RICO Enterprise").

67. At all relevant times in relation to the claims asserted in this Count IV, Defendants, as members of the RICO Enterprise and shared a common purpose to enrich themselves through the false and fraudulent representations made to Plaintiff regarding the Second Batch.

68. Defendants benefitted financially from their scheme to defraud Plaintiff by fraudulently communicating with Plaintiff that if Plaintiff paid the Second Batch Purchase Price, it would then own the Second Batch and Defendants would see to it that the Second Batch was transferred to Seabrook.

69. Even after the passage of many months and repeated misrepresentations to Plaintiff that (a) Defendants were in physical possession of the Second Batch and (b) that the Second Batch would be transferred to Seabrook, Defendants failed to deliver the Second Batch to Seabrook.

70. Defendants' scheme was derived, in part, from having engaged with Plaintiff in 2018 regarding Plaintiff's purchase of the First Batch and, realizing that Plaintiff was new to the process of purchasing investment grade wines, it would be relatively easy to convince Plaintiff to pay Defendants to engage in a second transaction with regard to the Second Batch.

71. At all relevant times in relation to the claims asserted in this Count IV, Defendants did cooperate jointly and severally in the commission of several predicate acts under 18 U.S.C. § 1961(A) and (B) in violation of 18 U.S.C. § 1962(d) ("Predicate Acts").

72. The Predicate Acts consist of mail fraud in violation of 18 U.S.C. § 1341 by virtue of the July 7, 2021 letter - one part of the July 2021 Communications. The July 7, 2021 letter by Logan was intended to mislead Plaintiff as to Defendants' having actually acquired in 2019 the wine comprising the Second Batch; that Defendants remained in possession of the Second Batch as of the date of such letter; and that Defendants would ship the Second Batch to Seabrook. In reliance on such letter, Plaintiff delayed taking action to seek to recover physical possession of the Second Batch.

73. The Predicate Acts also consist of wire fraud in violation of 18 U.S.C. § 1343 by virtue of (a) the July 5, 2021 email from Logan - the other part of the July 2021 Communications; (b) the Mora Communications and (c) the communications between Nguy and Mora as described in Paragraph 41, *supra*.

74. As a result of Defendants' commission of the Predicate Acts in furtherance of their scheme to defraud Plaintiff by either keeping the Second Batch Purchase Price without delivering the Second Batch to Seabrook or by converting the Second Batch (assuming the Second Batch ever existed) to their own benefit, Defendants have engaged in a pattern of racketeering activity that has resulted in damages to the Plaintiff.

WHEREFORE, Plaintiff demands entry of a judgment against the Defendants, jointly and severally, for its damages pursuant to 18 U.S.C. § 1964(c) including three times the actual damages suffered by Plaintiffs plus costs and attorney fees and such other relief as is appropriate.

## COUNT V - VIOLATION OF RICO 18 U.S.C. §1962(D) CONSPIRACY TO CONDUCT THE AFFAIRS OF A RACKETEERING ENTERPRISE

75. This is an action for damages against all Defendants for violation of 18 U.S.C. § 1962(D).

76. Plaintiff repeats and realleges paragraphs 1 through 47 and 63 through 74, above, as if fully set forth herein.

77. As referenced in Count IV, above, Defendants agreed and conspired to violate 18 U.S.C. § 1962 (a), (b) and (c) through their active participation in the RICO Enterprise.

78. As a result of Defendants' conspiracy in furtherance of their scheme to defraud Plaintiff by either keeping the Second Batch Purchase Price or by converting the Second Batch to their own benefit, Defendants' conspiracy has resulted in damages to the Plaintiff.

WHEREFORE, Plaintiff demands entry of a judgment against the Defendants, jointly and severally, for its damages pursuant to 18 U.S.C. § 1964(c) including three times the actual damages suffered by Plaintiffs plus costs and attorney fees and such other relief as is appropriate.

Date:   January 10, 2024

Respectfully Submitted,
SHUMAKER, LOOP & KENDRICK, LLP
Post Office Box 49948
Sarasota, Florida 34230-6948
941-364-2747 / 941-364-3999 facsimile
*Attorneys for Global Industries Holdings, LTD.*

By:   */s/ Mark D. Hildreth*
Mark D. Hildreth
Florida Bar No. 454893
mhildreth@shumaker.com

#30230675v1